No. 45,896

HUTCHINSON NATIONAL BANK AND TRUST COMPANY of Hutchinson, Kansas, *Appellant,* v. N. F. ENGLISH CONSTRUCTION COMPANY, INC., *Appellee.*

(482 P. 2d 35)

Opinion filed March 6, 1971.

*Frank S. Hodge* and *Kenneth E. Peirce,* of the firm of Hodge, Reynolds, Smith, Peirce and Forker, of Hutchinson, both argued the cause and were on the brief for the appellant.

*John F. Hayes,* of the firm of Gilliland, Hayes, Goering and Mills, of Hutchinson, argued the cause and was in the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Plaintiff-appellant, Hutchinson National Bank and Trust Company, hereafter referred to as Bank, instituted this action against defendant-appellee, N. F. English Construction Company, Inc., hereafter referred to as English, to recover on two accounts

receivable, which had been assigned to Bank as collateral by its debtor Bybee.

Bybee was a floor covering contractor doing business as Bybee's Custom Floors. English is a general contractor in the construction business.

On August 30, 1963, Bybee secured a loan from Bank, evidenced by a promissory note in the amount of $2,200.00. As security Bybee executed, on the same date, what was entitled "ASSIGNMENT OF SPECIFIC ACCOUNT(s) RECEIVABLE." By the terms of the document, Bybee assigned to Bank an account shown to be in the amount of $2,936.00 due from English on the new Metropolitan Life Insurance Building.

On September 13, 1963, Bybee executed a second assignment of an account receivable, in the amount of $2,304.75, which was alleged to represent an account due Bybee from English on a contract with the Atchison Topeka & Santa Fe Railroad Company. The second account was connected with Bybee's subcontract with English for the installation of flooring in a new railway freight depot. This assignment was made as collateral for a note of Bybee's due Bank in the amount of $1,618.00.

Both assignments were accepted by English in this language:

"We hereby accept the above assignment on this 3 day of September, 1963. It is hereby agreed that all checks in payment of this account will be made payable jointly to Bybee Custom Floors and 'Hutchinson National Bank and Trust Company.'

"Debtor /s/ N. F. English
Construction Co. Inc.
/s/ Jay Ewing, Jr."

On November 20, 1963, Bybee filed a voluntary petition in bankruptcy in the United States District Court. In due course Bybee was adjudicated a bankrupt.

On his bankruptcy schedule of liabilities, Bybee showed:

"Hutchinson Natl Bank-locally
"Hutch, Kansas

"Note given for adv of moneys on contract for work being done for N. F. English Constr Co., Hutch, Kans—Assignment accepted by English (3 separate transactions)

"14,000.00"

On his schedule of debts due petitioner, Bybee listed the account due from English on the Santa Fe Freight Depot in the amount of $2,304.75 and three other accounts due on subcontracts, which were

not assigned to Bank. The Metropolitan Life Insurance Building account was not listed.

On May 13, 1964, Bank filed a proof of claim in Bybee's bankruptcy proceedings in the total sum of $17,210.00 plus interest. Bank attached to its proof of claim an exhibit in which it set forth the particulars of the assignments of the accounts on the Metropolitan and Santa Fe contracts, and one other subcontract on a South Dakota school facility with which we are not concerned.

As far as we are able to ascertain from the record, Bank took no further steps in the matter until it filed this action in the District Court of Reno County on August 29, 1968.

In the meantime, Bybee was discharged in bankruptcy on October 6, 1965.

In its petition Bank recited the particulars of the Bybee loans, the assignments of the accounts, and attached, as exhibits, copies of the assignments and acceptances thereof by English. Bank prayed for judgment against English in the amount of $5,240.75, representing the total of the two assigned accounts.

English filed an answer to Bank's petition on September 17, 1968. English admitted the assignments, as alleged by Bank, but alleged that Bank submitted to the jurisdiction of the United States District Court by filing its claim therein; that all matters with respect to the two accounts were fully adjudicated; that by reason of the findings of the United States District Court no amount was or is due Bybee from English; and therefore no amount is due Bank from English. With respect to the Metropolitan account, English further alleged:

". . . This Defendant further states that such transaction grew out of a subcontract between Wilbur L. Bybee d/b/a Bybee's Custom Floors and this Defendant in connection with the construction of a building known as the new Metropolitan Life Insurance Building on North Plum Street in Hutchinson, Kansas; that said Bybee failed to perform such subcontract and that this Defendant had the same done by Bourell's Floor Covering Company of Hutchinson, Kansas, and that by reason of these facts no amount became due said Bybee by this Defendant."

Apparently, the next event in the course of this litigation was a pretrial conference. The record discloses a memorandum opinion filed by the trial court on July 28, 1969.

In its memorandum the trial court states the matter came on for determination whether the accounts receivable were previously adjudicated by the bankruptcy court.

The trial court described the issues and noted the positions of the parties in this manner:

"From the evidence presented it appears that with reference to the two accounts receivable assignments involved in our present case the plaintiff filed proof of claim pertaining to same in the Matter of Wilbur L. Bybee d/b/a Bybee's Custom Floors, Bankruptcy Case No. 8203-B-2, United States District Court for Kansas sitting as a bankruptcy court, and thereafter received proportionate distribution as other common creditors at the conclusion of said bankruptcy. In said bankruptcy proceedings certain setoffs were allowed which plaintiff in our present case alleges are in violation of the terms of the accounts receivable assignments, said terms being binding upon the defendant: to this allegation the defendant disagrees and contends such issue along with the issue of whether Bybee failed to perform his subcontract in the Metropolitan matter so that no amount became due under one account receivable assignment, now is res judicata by virtue of the bankruptcy proceedings."

The trial court then observed that state courts are under an obligation to defer to the bankruptcy jurisdiction of federal courts and must yield to the extent that federal jurisdiction is exclusive.

The trial court then ruled:

"In our present case, it seems to the court the plaintiff, represented by council, submitted the assignment claims to the bankruptcy court and thus the matters litigated therein, or which could have been litigated therein, are res judicata, and this court should take no further action herein.

"Accordingly, this case is dismissed without prejudice and costs are assessed against the plaintiff."

Following this ruling, Bank filed a motion for a new trial claiming in substance: (1) The matter was not properly before the court for summary judgment; (2) whether the Metropolitan account was collectible from Bybee was a question of fact; (3) there was no showing that the setoff to English involved any of the accounts claimed by Bank; and (4) the bankruptcy court did not have jurisdiction of the controversy between Bank and English.

The trial court filed a second memorandum opinion overruling Bank's motion for a new trial. The court noted that arguments were made by counsel and that the prior files and records in this case and in the bankruptcy case in the United States District Court were made a part of the memorandum opinion by reference.

Bank then perfected this appeal, raising substantially the same questions presented in its motion for a new trial.

We shall first consider the propriety of the trial court's dismissal of the action in a pretrial proceeding. Bank claims the trial court erred procedurally by dismissing its actions since no motion re-

questing dismissal had been filed. In its ruling on Bank's motion for a new trial, the trial court disposed of this contention:

"In answer to the plaintiff's contention this matter was not strictly presented in the form of a motion for summary judgment and thus this court had no authority to make its decision on July 28, 1969. Counsel's attention is invited to the fact at a pretrial conference under KSA 60-213 this matter was raised, briefs and documentary evidence were submitted to the court, and thereafter said court made its decision. . . ."

The trial court's disposition of the contention is squarely in line with this court's holdings in *Collins v. Meeker*, 198 Kan. 390, 424 P. 2d 488; and *Green v. Kaesler-Allen Lumber Co.*, 197 Kan. 788, 420 P. 2d 1019.

In *Green* it was held:

"A trial court has inherent power to summarily dispose of litigation on its own motion where there remains no genuine issue as to any material fact, and giving the benefit of all reasonable inferences that may be drawn from the evidence judgment must be for one of the parties as a matter of law." (Syl. ¶ 1.)

While we have none of the transcript of the pretrial conference in the record before us, the trial court makes it clear in its memorandum that the issues were argued and briefed by counsel and submitted with documentary evidence. The record discloses no objection by Bank to this procedure until after the trial court's decision was announced.

The substantial issue on appeal is whether the trial court's ruling was correct as a matter of law.

Was there a question of fact concerning the collectibility of the assigned account in connection with the Metropolitan contract? English alleged that Bybee failed to perform the Metropolitan subcontract; that another floor covering company was engaged in Bybee's stead, and thus no amount became due Bybee. The trial court noted that Bank states:

". . . it has no evidence to refute that portion of the defendant's answer stating Bybee did not perform the work which pertains to one accounts receivable involved in this case."

Bank makes no claim now that it has evidence to refute the allegation of English. Bank merely argues that since Bybee warranted in his assignment the account was valid, existing and collectible, English cannot deny liability thereon. The trouble is that English was not a party to such warranty. In its acceptance of the assignment, English merely agreed to make all checks in payment of

the account, payable jointly to Bybee and Bank. Since it is undisputed that Bybee did not perform on the Metropolitan subcontract nothing became due and no checks were written by English. The terms of the acceptance by English fell far short of an outright agreement between a general contractor and a bank, which created a new and direct legal right in the Bank, such as existed in *Nello L. Teer Company v. Kanawha Valley Bank* (4th Cir. 1955), 227 F. 2d 306, cited by Bank.

Since nothing was due him, Bybee did not list the Metropolitan account in his bankruptcy schedules, thus Bybee's bankruptcy had nothing to do with the Metropolitan account. Inasmuch as Bybee never performed, the Metropolitan account never came into being as to English under the terms of his acceptance. There is nothing due Bank from English by reason of the assignment.

However, with respect to the Santa Fe account, the Bank's rights against English, under Bybee's assignment, depends upon the effect of the bankruptcy proceedings.

Bank strenuously argues the bankruptcy court had no jurisdiction over the Santa Fe account and, even if so, it had no summary jurisdiction to adjudicate the rights of Bank in a proceeding allowing the trustee to setoff the Santa Fe and other accounts against the claim filed by English.

By filing its proof of claim against Bybee, Bank submitted the validity and amount of its claim to the jurisdiction of the bankruptcy court. (2 Collier on Bankruptcy [14th Ed.], § 23.08 [6], p. 550; 9 Am. Jur. 2d, Bankruptcy, § 53, p. 95.) Whether the bankruptcy court acquired summary jurisdiction to adjudicate Bank's rights in the Santa Fe account, in a proceeding to allow setoffs, is another question.

As previously noted, Bank attached an exhibit to its proof of claim setting out all of the particulars concerning Bybee's assignment of the Santa Fe account and the acceptance by English. Bybee listed the Santa Fe account together with other accounts due from English, totaling $5,028.54, as assets. Apparently, Bybee was indebted to English for more than $5,028.54. English filed a proof of claim in excess of the $5,028.54. The amount of English's claim is not shown but the statement that it was in excess of $5,028.54 is not challenged.

The setoff of mutual debts or credits between the estate of a bankrupt and a creditor is directed by 11 U. S. C. A. § 108 which reads:

"a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid." (p. 535.)

On September 23, 1965, the trustee filed a motion in the bankruptcy court to permit setoffs and reduce claims filed by various creditors of the bankrupt for the reason that many of the claimants were indebted to the bankrupt estate and that a setoff should be allowed the bankrupt estate in the amounts owed by the claimants. English was one of the claimants named in the motion and his indebtedness to the bankrupt estate was shown to be $5,028.54. A hearing on the motion to allow setoffs was set for October 8, 1965, and a notice, which included a copy of the motion, was mailed to all creditors and their attorneys of record.

The motion for setoffs was allowed on October 6, 1965. Bank did not appear.

On November 8, 1965, a final meeting of creditors was held. The only appearances shown are those of the trustee and the attorney for Bybee. A distribution to creditors was made which shows $701.15 paid to Bank and $287.81 paid to English.

Bank now says the $701.15 was duly credited against its claim against Bybee and English in another suit, which is not a part of the instant action. The Santa Fe account was a portion of the sum setoff against the claim of English, thus reducing its distributive share, and—to that extent at least—if Bank were to prevail here the effect would be to hold English accountable twice for the same account. The setoff proceeding certainly amounted to an exercise of jurisdiction by the bankruptcy court over the Santa Fe account.

Even though it filed its proof of claim with assignments attached, Bank earnestly argues the bankruptcy court did not acquire summary jurisdiction to absolve the Santa Fe account in the setoff proceedings.

Bank directs our attention to this language found in 2 Collier on Bankruptcy [14th Ed.], § 23.05 [4]:

". . . But where there has been an outright and complete assignment of the chose in action to a third party prior to bankruptcy, as distinguished from a mere encumbrance of it, a summary proceeding will not lie, and a plenary suit is the proper remedy. . . ." (pp. 487-488.)

However, the issue here is not whether the bankruptcy court could or would have exercised summary jurisdiction over the timely objection of Bank. The question is whether Bank's failure to object

in any manner at anytime in the course of the proceedings constituted consent to summary jurisdiction.

We find the applicable general rule stated in a subsequent section of 2 Collier on Bankruptcy [14th Ed.], § 23.08 [1]:

"It is well settled that in all cases where a party is entitled to the determination of his rights in a plenary action, he may nevertheless consent to the exercise of summary jurisdiction by the bankruptcy court and in that manner have his rights adjudicated. . . ." (p. 530.)

In all likelihood if Bank had expressly reserved its right to proceed against its security in a plenary action or suit in another court, when filing its claim or if it had objected to the exercise of summary jurisdiction in the setoff proceeding, it might well have obtained the plenary adjudication it now seeks. The cases uniformly have not found consent where reservations were stated in the claim filed. (*Glens Falls Insurance Co. v. Strom* [S. D. Cal. S. D. 1961], 198 F. Supp. 450; *Pickens v. Roy,* 187 U. S. 177, 47 L. Ed. 128, 23 S. Ct. 78.)

However, the right to a plenary suit is a procedural right which may, of course, be waived. (*O'Dell v. United States* [10th Cir. 1964], 326 F. 2d 451; *Reconstruction Finance Corp. v. Riverview State Bank,* [10th Cir. 1955], 217 F. 2d 455.) Thus, one who invokes the jurisdiction of the bankruptcy court by filing a claim with that court or who fails to object to the summary jurisdiction of the court at the earliest opportunity, thereby consents to jurisdiction. (*O'Dell v. United States,* supra; *Commercial Discount Company v. Rutledge* [10th Cir. 1961], 297 F. 2d 370.)

It is true the controversy over the Santa Fe account is between third parties. The question, however, whether Bank by reason of its assignment was entitled to the account, thus barring setoff of the account against the claim of English, directly involved the bankrupt and his property.

We hold that since Bank invoked the jurisdiction of the bankruptcy court, by filing its claim and then failed to object to the exercise of summary jurisdiction by the court, in allowing the setoff, Bank thereby consented to such jurisdiction.

Bank complains the notice received of the trustee's setoff motion was not sufficiently specific so as to apprise it of the English setoff, and thus the adjudication of the bankruptcy court is open to collateral attack in this action.

Bank does not dispute the fact that a two weeks' notice of the hearing on the trustee's motion to permit setoffs was received

and that a copy of the motion showing a proposed setoff to English was attached.

A bankruptcy court has jurisdiction to determine in the first instance whether a summary proceeding can be maintained. If it errs in so proceeding, the remedy is by way of appeal. (*Schweer v. Brown,* 195 U. S. 171, 49 L. Ed. 144, 25 S. Ct. 15.)

Where a bankruptcy court has determined its jurisdiction, the exercise thereof cannot be collaterally attacked in a state court action commenced three years after termination of the bankruptcy proceeding. The general rule is stated in 9 Am. Jur. 2d § 81.

"In the absence of fraud, the bankruptcy court's determination of an actual controversy involving its jurisdiction of the subject is res judicata and not subject to collateral attack by persons who participated therein. . . ." (p. 123.)

While there is no showing here of an actual controversy in bankruptcy court concerning its jurisdiction, the record does show that Bank in the first instance submitted to bankruptcy jurisdiction by filing its claim with assignments attached. The bankruptcy court assumed jurisdiction and proceeded to administer the affairs of the bankrupt estate without objection by Bank. The issue concerning the setoff of the Santa Fe account against the claim of English directly affected the bankrupt and his property. The question was properly before the bankruptcy court and the determination thereof cannot be challenged at this late date in a state court proceeding.

The judgment of the trial court is affirmed.