(613 P.2d 670)

No. 50,986

DOYLE E. KAUK and VERONICA L. KAUK, *Appellants,* v. FIRST NATIONAL BANK OF HOXIE, *et al., Appellee.*

Opinion filed June 20, 1980.

*Terry L. Rogers* and *Stan Morgan,* of Wolfe and Morgan, of Oberlin, for the appellants.

*Joseph W. Fromme,* of Hoxie, for the appellee.

Before FOTH, C.J., SWINEHART and MEYER, JJ.

SWINEHART, J.: This appeal arose out of an action filed in the district court of Sheridan County by the plaintiffs Doyle and Veronica Kauk against the contractor Tony Woodwyk and subcontractors for their new home. The defendant First National Bank of Hoxie, which was partially financing the contract for the contractor, was also named in the suit.

The plaintiffs appeal from a summary judgment entered in favor of the First National Bank of Hoxie, arising out of its claim against the plaintiffs for $15,000 as guarantors of a loan made to the defendant contractor, and from the denial of plaintiffs' motion for summary judgment.

Two issues are raised on appeal: (1) whether the trial court properly entered summary judgment for the Bank; and (2) whether the denial of plaintiffs' motion for summary judgment may be reviewed upon appeal. If the denial may be reviewed, was

the plaintiffs' motion for summary judgment properly denied?

In March of 1977, the Kauks hired the defendants Tony and Ruth Woodwyk, d/b/a Tony Woodwyk Construction Co., to construct a home on the plaintiffs' real estate. The original construction cost of $59,000 was reduced to $54,000 by written agreement in September, 1977. Under the contract the plaintiffs were to make a down payment of $14,750 and then make successive installment payments of varying amounts which would become due as a fixed percentage of the work was completed. On March 18, 1977, the defendant First National Bank sent a letter to Doyle Kauk which alluded to arrangements Kauk had made with Woodwyk for the purpose of enabling Woodwyk to obtain interim financing for the construction project. The letter read as follows:

March 18, 1977

Mr. Doyle Kauk
Hoxie, KS 67740

Dear Doyle:

    I am requesting that you retain a minimum of $15,000.00, as a final payment to Mr. Woodwyk on your home construction, and that at the time of this final disbursement it be made payable to both Tony Woodwyk AND The First National Bank, Hoxie, KS.
    Tony stated that he had informed you of such arrangements with the Bank in the past, and I wish to say this has worked out satisfactorily.
    This arrangement gives Tony working capital during construction and gives the Bank protection for final payment on the note.
    The $15,000.00 is a maximum/will loan to Tony on your home construction and is an amount agreed to with Tony prior to construction.
    Please sign the duplicate copy of this letter and have it returned to me if the above mentioned arrangements are satisfactory.
    Thank you.

Sincerely yours,

MYRON DIETZ

P. S.  The note will be dated to mature on June 1, 1977, since Tony feels his cash position will warrant payment of the note by that time.

Kauk signed a duplicate of the letter and returned it to the Bank as requested on March 20, 1977. As a result, the Bank extended credit to Woodwyk in the amount of $15,000. (It is not clear how the $15,000 payment required to be made jointly payable to the

Bank and Woodwyk would square with the payment schedule to which Woodwyk and the plaintiffs had originally agreed, as it did not call for a final payment to Woodwyk of $15,000. The Kauks indicated that they had an unwritten understanding with Woodwyk regarding this discrepancy.)

The note was renewed on June 1, 1977, but the Kauks never received notice of that action. A written agreement dated October 14, 1977, was mailed to the plaintiffs, however. That agreement provided:

**THE FIRST NATIONAL BANK**
CAPITAL AND SURPLUS $500,000.00

HOXIE, KANSAS 67740

MYRON DIETZ
CASHIER

AGREEMENT

In consideration of the First National Bank, Hoxie, KS., extending interim financing to Tony Woodwyk d/b/a Woodwyk Const. Co., for the purpose of constructing a house for Doyle and Veronica Kauk as described in a letter to Doyle Kauk dated March 18, 1977, of which Doyle E. Kauk did agree to and sign that the final $15,000.00 due to Woodwyk Const Co would in fact be a check made payable to Woodwyk Const Co AND the First National Bank, Hoxie, KS., for the purpose of paying in full the interim financing note.

'The above mentioned $15,000.00 note is now due and payable and the First National Bank, Hoxie, KS., hereby agrees to renew the note for $15,000.00, due in full no later than December 1, 1977, and Doyle and Veronica Kauk do hereby further agree that the final payment due to Woodwyk Const Co of $15,000.00, will be a check payable to Woodwyk Const Co AND First National Bank, Hoxie, KS., on or near the 1st day of December, 1977, to pay in full the note as previously described.

DATED THIS 14TH DAY OF OCTOBER 1977

SIGNED: _____
Doyle E. Kauk

Myron Dietz

SIGNED: _____
Veronica Kauk

The plaintiffs signed the October 14 agreement. By that time they had already paid a total of $35,438 to Woodwyk. On October 15, 1977, the defendant Bank renewed the Woodwyk note for $15,000 with a due date of December 1, 1977.

On December 30, 1977, plaintiffs filed suit against Woodwyk and various subcontractors, as well as the defendant Bank, alleging that Woodwyk breached his contract with them by failing to complete the construction on their home. They sought damages and an accounting from Woodwyk. The petition denied any liability on the part of the plaintiffs for any loan made by the Bank to Woodwyk, but nevertheless sought to make the Bank a party to the lawsuit. In its answer the Bank alleged that the plaintiffs were guarantors of the $15,000 loan it made, and sought judgment against the plaintiffs for that amount. The plaintiffs moved for summary judgment on October 13, 1978, and their motion was denied. The district court, however, granted the Bank's motion for summary judgment in opposition. It found that the plaintiffs had guaranteed payment of the $15,000 loan the Bank had made to Woodwyk by terms of the March 18 letter and the October 14 agreement; that the October 14 agreement complied with the Statute of Frauds; and that the consideration for the guaranty was the $15,000 loan to Woodwyk for interim financing for the construction of the plaintiffs' home. The court based its decision on the documents signed by the plaintiffs and awarded defendant Bank the sum of $15,000 with interest.

While the trial court relied upon the documents signed by plaintiffs in reaching its determination, plaintiffs have included other evidence adduced at trial in their brief. All parties interested in the $15,000 loan agreed that the money was to be used by Woodwyk for construction of the Kauk home. They additionally assumed that the final payment which the Kauks were to make jointly to the Bank and Woodwyk referred to the obligation plaintiffs would have to Woodwyk when the home was completed. The Bank asserted that it would not have renewed the note if the plaintiffs had not signed the October 14 agreement, as it believed the Kauks were guarantors of the $15,000 loan.

On March 26, 1979, the district court filed a certificate in compliance with K.S.A. 60-254(b) finding that the summary judgment in favor of the Bank was final for purposes of appeal and that there was no just reason for delaying the appeal.

We first consider whether the trial court properly granted summary judgment for the defendant Bank. The overriding concern of the parties on appeal is the proper interpretation of the October 14, 1977, agreement between the defendant Bank and the plaintiffs. The trial court found that the document constituted a valid contract of guaranty and thus held the plaintiffs liable on the $15,000 note made by the Bank to Woodwyk. In reaching this conclusion, the court relied solely upon the terms of the agreement. As part of their argument, plaintiffs assert that this document is ambiguous and that the trial court should have resorted to extrinsic evidence to help interpret it. They contend alternatively that even if the agreement is clear on its face, the trial court misconstrued the document, *i.e.,* its conclusion that the plaintiffs were guarantors was incorrect.

Interpreting a written contract is a judicial function, *Maltby v. Sumner,* 169 Kan. 417, 219 P.2d 395 (1950), as is determining whether a written contract is ambiguous, *First National Bank of Hutchinson v. Kaiser,* 222 Kan. 274, 564 P.2d 493 (1977). On appeal we have the same opportunity afforded the trial court to decide the question of ambiguity because the contract is in writing. *Craig v. Hamilton,* 213 Kan. 665, 667, 518 P.2d 539 (1974). We concur with the determination of the trial court that the October 14 agreement and the March 18 letter to which it refers are free from ambiguity. Therefore, we need not resort to extrinsic evidence to aid our interpretation.

After thoroughly examining these writings, we conclude, however, that they do not establish a guaranty relationship between the plaintiffs and the defendant Bank because the essential elements of a guaranty contract are not present in this action.

"A guaranty is a contract between two or more persons, founded upon consideration, by which one person promises to answer to another for the debt, default or miscarriage of a third person, and, in a legal sense, has relation to some other contract or obligation with reference to which it is a collateral undertaking. The contract of a guarantor is his own separate contract. It is in the nature of a warranty by him that the thing guaranteed to be done by the principal shall be done, and is not an engagement jointly with the principal to do the thing. A guarantor, not being a joint contractor with the principal, is not bound like a surety to do what the principal had contracted to do, but answers only for the default of the principal. The original contract of his principal is not his contract. (*Bomud Co. v. Yockey Oil Co.,* 180 Kan. 109, 299 P.2d 72, 58 A.L.R.2d 1265, and authorities cited therein.)" *Trego WaKeeney State Bank v. Maier,* 214 Kan. 169, 173, 519 P.2d 743 (1974).

Accord, *Walton v. Piqua State Bank,* 204 Kan. 741, 466 P.2d 316 (1970); *First National Bank of Anthony v. King,* 2 Kan. App. 2d 519, 583 P.2 389 (1978).

The documents in question, obviously haphazardly drawn and obtained, merely reflect the assent of the plaintiffs to make final payment due the defendant contractor by check made jointly payable to the contractor and the defendant Bank as provided by the contract executed by these parties and assigned by the contractor to the Bank.

We find support for our position in *Hutchinson Nat'l Bank & Trust Co. v. N.F. English Construction Co. Inc.,* 206 Kan. 661, 482 P.2d 35 (1971). In that action the plaintiff bank sought to recover against English, a general contractor, on two accounts receivable which had been assigned to the bank as collateral by its debtor who was a subcontractor on several construction projects for English. The assignment of both accounts was accepted by the general contractor in this language:

" 'We hereby accept the above assignment on this 3 day of September, 1963. It is hereby agreed that all checks in payment of this account will be made payable jointly to Bybee Custom Floors and "Hutchinson National Bank and Trust Company." ' " 206 Kan. at 662.

In the relevant part of its defense, the general contractor alleged that its subcontractor failed to perform on the subcontract and that another company had been engaged in its stead. Since the subcontractor was not entitled to any payment because it breached their contract, English contended it was not liable to the Bank for the accounts receivable. One of the accounts was listed in the subcontractor's bankruptcy schedules, the other was not. As to the unlisted account, the Supreme Court found that by accepting the assignment, the general contractor merely agreed to make all of the checks in payment on the accounts payable jointly to the subcontractor and the Bank. The court found that the terms of the acceptance by the general contractor fell far short of an outright agreement between it and the Bank which would have created a new and direct legal right in the Bank against the general contractor. The account before the bankruptcy court is irrelevant to our determination.

We therefore hold that the trial court erred by finding that the documents in question created a guaranty relationship between

the Kauks and the Bank and by granting summary judgment for the defendant Bank.

Plaintiffs' second issue concerns our authority to review denial of a summary judgment upon appeal. Plaintiffs urge that the decision of the trial court denying their motion for summary judgment at the time of entry of summary judgment on the defendant's motion should be reviewed on this appeal. They rely upon Annot., 15 A.L.R.3d 899, 925-929, § 9 (b), and cases cited therein, to support their contention. We need not discuss the cases digested in the annotation. Suffice it to say they demonstrate that appellate courts in other jurisdictions permit review of the denial of a motion for summary judgment made by one party at the same time they consider the propriety of a grant of summary judgment for the opposing party. Defendant agrees with plaintiffs that this court has the authority to review the denial of plaintiffs' motion which was argued before the trial court with the defendant's motion for summary judgment.

No Kansas cases have been presented by the parties, nor has further research uncovered any, in which an appeal was taken from the grant of a summary judgment in favor of one party and the denial of a summary judgment motion of the other party. In *In re Estate of Ziebell,* 2 Kan. App. 2d 99, 575 P.2d 574 (1978), this court refused to find appellate jurisdiction from the denial of a summary judgment. However, here the grant of summary judgment became appealable by virtue of the court's issuance of a K.S.A. 60-254(*b*) certificate, and under K.S.A. 60-2102(*a*)(4) any act or ruling from the beginning of the proceedings is reviewable upon a final decision in any action. Accordingly, in this instance this court will review the denial of plaintiffs' summary judgment motion.

In view of our foregoing interpretation of the October 14, 1977, agreement, we find that the trial court erred by refusing to sustain the plaintiffs' motion for summary judgment.

Summary judgment in favor of the defendant First National Bank of Hoxie is reversed, and the case is remanded to the district court to enter judgment for the plaintiffs, in accordance with this opinion.