(799 P.2d 512)
No. 64,605

SOUTHWEST NATIONAL BANK, *et al., Appellant,* v. SIMPSON AND SON, INC., *Appellee.*

Opinion filed October 12, 1990.

*Bruce B. Waugh* and *Carol A. Zuschek*, of Gilliland & Hayes, P.A., of Kansas City, Missouri, for the appellant.

*Brian C. Wright* and *Robert J. Nugent*, of Turner & Boisseau, Chartered, of Wichita, for the appellee.

Before BRAZIL, P.J., RULON and LEWIS, JJ.

LEWIS, J.: Southwest National Bank (Bank) filed suit against Simpson & Son, Inc., (Simpson) for contractual indemnification. Both parties filed motions for summary judgment and the trial

court granted summary judgment in favor of Simpson. The Bank appeals from the entry of summary judgment against it and from the trial court's denial of the Bank's motion for summary judgment.

After review, we reverse and remand.

In 1985, the Bank retained Simpson as a general contractor to do remodeling and construction work. Simpson prevailed on an architect to prepare the agreement for the parties. The parties utilized as their agreement a form devised by the American Institute of Architects (AIA). The particular form utilized was AIA document A111, 1978 edition. This document, on its face, is to be used "where the basis of payment is the cost of the work plus a fee." The agreement also provided, on its face, "Use only with the 1976 edition of AIA document A201, General Conditions of the Contract for Construction."

This lawsuit arises as a result of injuries initially sustained by Scott Brunner. Brunner was injured in the replacement of freight elevator doors located at the Bank. The replacement of these doors was part of the work to be performed by Simpson for the Bank. In order to complete this particular part of the project, Simpson purchased the replacement doors and accompanying hardware from a concern known as Hollow Metal Doors (HMD). Included in the materials ordered by Simpson were "closures" or "closers," which apparently functioned in the manner their name implies. When Simpson attempted to complete the replacement of the elevator doors, it found that the "closures" did not fit. After some discussion, HMD agreed to order replacement closures and to install them upon their arrival. This arrangement was apparently satisfactory to all parties, and the Bank paid Simpson in full with the understanding the job was to be completed when the proper closures arrived.

Upon arrival of the closures, HMD sent its own employees, including Scott Brunner, to install the hardware. During the process of the installation, Brunner was seriously injured.

Brunner proceeded to sue the Bank and Simpson, alleging that their negligence was the proximate cause of his injuries. Simpson settled with Brunner, who continued his lawsuit against the Bank. Ultimately, the jury returned a verdict of $270,000 in favor of Brunner and against the Bank, and found the Bank to be 85

percent at fault, Brunner to be 7.5 percent at fault, and Simpson to be 7.5 percent at fault. The Bank appealed the verdict to this court and, after reducing the damage award by $21,000, we otherwise affirmed the award in favor of Brunner. *Brunner v. Southwest Nat'l Bank*, No. 63,489, unpublished opinion filed December 8, 1989.

The Bank then sued Simpson, seeking indemnification under a provision included in AIA document A201. Simpson argues that A201 was not a part of its agreement with the Bank. Document A201 was not attached to document A111, although it was referred to in document A111, and was purportedly incorporated by reference into the agreement of the parties.

This is an appeal which involves a number of issues, and we shall address them separately.

## DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF SIMPSON?

As we pointed out above, Brunner filed a lawsuit against both the Bank and Simpson after he was injured on the job site. During the pendency of this action, Simpson filed a motion for summary judgment against Brunner on the ground that Brunner's only relief against Simpson would be to file a workers compensation claim. The trial court denied the motion for summary judgment, holding as follows:

"I'm going to deny the motion. *At best defendant has a factual issue that needs to be determined by a jury.* That's all I'm going to say other than suggest to both counsel you better work real hard on your jury instructions on this issue. You want to help the trial judge and, more important than helping the trial judge, present your issue to a jury for a determination." (Emphasis added.)

Rather than submit the factual issue identified by the court to the jury, Simpson quietly settled with Brunner for the sum of $40,000.

During the trial between the Bank and Simpson, Simpson filed its own motion for summary judgment against the Bank. This motion was heard by Judge Buchanan, whereas the Brunner motion had been heard by Judge Kennedy. Judge Buchanan granted Simpson's motion for summary judgment and, as his only reason, stated:

"The decision of Judge Kennedy on the motion for summary judgment of Simpson and Son, Inc., heard August 11, 1988, filed August 12, 1988, became the law of the case, even though not journalized as ordered, and determined the relationship of Scott Bruner [sic] to the various parties. If Scott Bruner [sic] had been doing work under the contract, as opposed to merely delivering and unloading goods, his exclusive remedy would be under the Workers' Compensation Act. The decision of Judge Kennedy took him out of the contract and out of the sole remedy against Simpson and Sons, Inc. Therefore, Scott Bruner [sic] was not doing work under the contract."

The trial court's reliance on the decision of Judge Kennedy as a basis for granting summary judgment in favor of Simpson was misplaced. It is immediately apparent that Judge Buchanan misread the decision of Judge Kennedy. Judge Kennedy did not decide that Scott Brunner was not doing work under the contract. Judge Kennedy decided that whether Brunner was a statutory employee of Simpson was *a question of fact to be determined by the jury*. Judge Kennedy determined only that this issue was a disputed question of fact. Since Simpson chose not to litigate this question of fact, but settled with Brunner, the issue identified by Judge Kennedy was never resolved.

We have no choice but to hold that Judge Buchanan was in error concerning the effect of the decision of Judge Kennedy. It follows that his decision to grant Simpson's motion for summary judgment on the basis of Judge Kennedy's ruling was also in error, and we reverse the entry of summary judgment in favor of Simpson.

Simpson rather ingenuously argues that we should indulge in some speculation and that, by so doing, we can sustain the decision of Judge Buchanan. Despite the apparent seriousness with which it pursued its motion against Brunner, Simpson now argues that its motion for summary judgment against Brunner was without merit. It strongly suggests that, *had* there been a trial, it *would have* lost on that issue. Simpson now argues that we should sustain the decision of the district court on the rather startling premise that, had it gone to trial based on the theory set forth in its motion for summary judgment, it was doomed to *certain failure*. We choose not to speculate as to how that issue might have been decided had it gone to trial. We deal in realities here, and the reality is that Judge Buchanan granted the motion for

summary judgment on an incorrect premise. He labored under the belief that Judge Kennedy had resolved the factual questions and that this decision was the "law of the case."

The term "law of the case" simply means that, once an issue is determined by a previous order of the court, further litigation of that issue is generally foreclosed insofar as that particular lawsuit is concerned. See, e.g., *United States v. U. S. Smelting Co.*, 339 U.S. 186, 198-99, 94 L. Ed. 750, 70 S. Ct. 537 (1949); *Messinger v. Anderson*, 225 U.S. 436, 444, 56 L. Ed. 1152, 32 S. Ct. 739 (1912); *United States v. Carson*, 793 F.2d 1141, 1147 (10th Cir. 1986). The ruling by Judge Kennedy certainly did not establish as the "law of the case" the fact that Brunner was not injured when performing the work.

Our scope of review on a decision sustaining a motion for summary judgment has been set forth on a number of occasions.

"Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. [Citations omitted.] When a summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. [Citations omitted.]" *Patterson v. Brouhard*, 246 Kan. 700, 702-03, 792 P.2d 983 (1990).

Our review of Judge Buchanan's decision under the strictures stated above and pursuant to the settled law of this state reveals that his decision is erroneous and must be reversed.

## MAY THIS COURT REVIEW THE DENIAL OF THE BANK'S MOTION FOR SUMMARY JUDGMENT?

The Bank filed its own motion for summary judgment against Simpson. The trial court denied that motion, and the Bank has appealed.

Simpson argues that this court has no jurisdiction to review the denial of the Bank's motion for summary judgment. We turn first to the question of our jurisdiction.

Simpson submits that the trial court's denial of the Bank's motion for summary judgment is not properly appealable. It bases this argument on the fact that, as to the Bank, the denial of its motion for summary judgment is not a final order. We do not agree with Simpson's construction of the law in this regard.

It is true that our cases often state the rule that a denial of a motion for summary judgment is not an appealable decision. See *In re Estate of Ziebell*, 2 Kan. App. 2d 99, 100-01, 575 P.2d 574 (1978).

As with any rule, there are many exceptions to the rule stated above, and one such exception is found in *Kauk v. First Nat'l Bank of Hoxie*, 5 Kan. App. 2d 83, Syl. ¶ 3, 613 P.2d 670 (1980), in which this court held:

"In general, a party may only appeal from the entry of a summary judgment in favor of the opposing party, and not from the denial of the party's own motion for summary judgment. However, when a motion for summary judgment is denied at the time a motion for summary judgment in opposition is granted, the denial of summary judgment may be considered with an appeal from the grant of summary judgment."

We note that in *Kauk* the trial court had filed a certificate under K.S.A. 60-254(b), finding that its denial of the motion for summary judgment was a final judgment.

We believe that, despite the absence of the 60-254(b) certification in this case, the reasoning of *Kauk* is sound, and we apply it here to take jurisdiction of this issue of the Bank's appeal. The absence of the 60-254(b) certification is not dispositive. That statute applies where other claims remain after the granting of summary judgments. In this case, no other claims remained. The granting of Simpson's motion and the denial of the Bank's motion essentially completed the case and constituted a final order. The court's twin rulings were, in effect, a final decision since nothing further remained to be decided in the litigation.

K.S.A. 1989 Supp. 60-2102(a)(4) provides that, on appeal from a final decision, "any act or ruling from the beginning of the proceedings shall be reviewable." Under the circumstances presented here, the denial of the Bank's motion for summary judgment is reviewable.

## IS THE BANK ENTITLED TO SUMMARY JUDGMENT?

In determining this issue, there are three questions which we must resolve: (a) Was AIA document A201 incorporated by reference into the agreement of the parties; (b) is the Bank entitled to judgment on its indemnification claim based on the uncontroverted facts; and (c) did the Bank waive its claim for indemnification?

(a) Was AIA document A201 incorporated by reference into the agreement of the parties?

The clause on which the Bank bases its claim for indemnification is found in AIA document A201. It is central to the determination of the Bank's claim to determine whether AIA document A201 was incorporated by reference into the agreement of the parties. This issue has been dealt with by courts of our sister states, but appears to be a case of first impression in Kansas. The Bank cites *Steffek v. Wichers*, 211 Kan. 342, 507 P.2d 274 (1973), as authority that Kansas recognizes the incorporation by reference of form A201. That decision contains the following statement: "AIA Document A201, General Conditions of the Contract, which was made a part of the agreement by reference, is material to the determination of this case." 211 Kan. at 344. That statement is nothing more than a reflection of the agreement of the parties. The question of whether A201 was incorporated was not an issue, and *Steffek* provides us with no guidance in resolving that question.

The Bank argues that A201 and all of its provisions were incorporated by reference in the agreement of the parties. Simpson insists that A201 was not part of the agreement between the parties or, at the very least, the contract is ambiguous on the question of incorporation.

First of all we note that A201 was not stapled to document A111, nor does it seem to have been physically present when the parties executed the agreement. The only document actually signed by the parties was AIA document A111. That document, on its front page, states: "Use only with the 1976 edition of AIA document A201, General Conditions for Construction."

Article 1 of Document A111 reads as follows:

"The Contract Documents consist of this Agreement, the Conditions of the Contract (General, Supplementary and other Conditions), the Drawings, the Specifications, all Addenda issued prior to and all Modifications issued after execution of this Agreement. These form the Contract, and all are as fully a part of the Contract as if attached to this Agreement or repeated herein. An enumeration of the Contract Documents appears in Article 16. If anything in the Contract Documents is inconsistent with this Agreement, the Agreement shall govern."

Article 16.2, which is referred to in Article 1, reads as follows:

"The Contract Documents, which constitute the entire agreement between the Owner and the Contractor, are listed in Article 1 and, except for Modifications issued after execution of this Agreement, are enumerated as follows: (List below the Agreement, the Conditions of the Contract [General, Supplementary, and other Conditions], the Drawings, the Specifications, and any Addenda and accepted alternates, showing page or sheet numbers in all cases and dates where applicable.)"

Despite the indication that the contract documents are enumerated "as follows," no documents are, in fact, listed following Article 16.

Simpson argues that, since form A201 is not listed following Article 16, it is not a part of the contract or the contract is ambiguous and we must resort to parol evidence to decide the issue. We do not agree.

Unless a contract is ambiguous, its meaning must be determined solely from its four corners. *Kansas Gas & Electric Co. v. Kansas Power & Light Co.*, 12 Kan. App. 2d 546, 551, 751 P.2d 146, *rev. denied* 243 Kan. 779 (1988). Further, "[w]hether an ambiguity exists in a written instrument is a question of law to be decided by the court." *Kennedy & Mitchell, Inc. v. Anadarko Prod. Co.*, 243 Kan. 130, 133, 754 P.2d 803 (1988).

Although there are no Kansas cases on point, there are two cases from sister states which are almost exactly on point and which we choose to follow. In *Walker v. V & V Constr. Co., Inc.*, 28 Mass. App. Ct. 908, 545 N.E.2d 1192 (1989), the question was whether an arbitration clause in form A201 was part of the agreement between the parties. The contract documents and the arguments advanced are nearly identical to those in the instant matter. After reciting the notations on document A111, which are exactly the same as on the documents in the instant matter, the Massachusetts court held that A201 was incorporated by reference, stating:

"Given these facts, we hold that the general conditions referred to were a part of the contract despite the allegations (which we accept as true for purposes of deciding this appeal) that the general conditions were never delivered to the plaintiffs and were never brought to their attention until the action had been commenced. The master contracts the parties signed plainly indicated they were to be read with the general conditions form AIA Document A201, and if the parties wished to vary this provision they

should have so stated by way of addendum or otherwise. The failure to list the general conditions form in Article 16 at best created an ambiguity which, in the absence of evidence of mutual agreement *not* to employ the general conditions form, is properly resolved by the court as matter of law. See *Sherman v. Employers' Liab. Assur. Corp., Ltd.,* 343 Mass. 354, 356, 178 N.E.2d 864 (1961); see also Restatement (Second) of Contracts § 212(2) (1979). Immaterial in this connection is the assertion of the plaintiff Randall Walker that he personally did not intend to make contract disputes subject to arbitration. [Citations omitted.]" 28 Mass. App. Ct. 908-09.

In *Jim Carlson Const., Inc. v. Bailey,* 769 S.W.2d 480 (Mo. App. 1989), the issue was again identical to the one now before this court. The language in Article 1 of the agreement construed by the Missouri court was exactly the same as appears in the contract in the instant matter. Article 7 in the agreement before the Missouri court read exactly as does Article 16 in the present case. In addition, in *Bailey,* there were no contract documents enumerated following Section 7.2 (which corresponds to Article 16.2 in the instant matter). Additionally, there were no other documents attached to the contract when it was signed by the parties.

The question before the Missouri court, as it is here, is whether document A201 was incorporated by reference in the face of the failure of Article 16 to list that document. The Missouri court held that it was incorporated by reference and held as follows:

"The mere fact that the parties disagree on the interpretation of a contract does not render the document itself ambiguous. The test is whether the disputed language, in the context of the entire agreement, is reasonably susceptible of more than one construction giving the words their plain and ordinary meaning as understood by a reasonable average person. [Citation omitted.] Whether a contract is ambiguous is a question of law for the court. [Citation omitted.]

"Even when there is ambiguity in a contract it is construed against the drafter, [citation omitted] and seeming contradictions must be harmonized away if reasonably possible. [Citation omitted.] Furthermore, an interpretation of a contract or agreement which evolves unreasonable results, when a probable and reasonable construction can be adopted, will be rejected. [Citation omitted.]

"The lack of enumeration of the contract documents after Section 7.2 of the Agreement does not render the Agreement in the case at bar ambiguous. In reviewing the Agreement as a whole, Article 1 definitively states that the general conditions are made fully a part of the contract as if attached to the agreement. The Agreement further states, under Section 7.2, that the Contract Documents which constitute the entire agreement are listed

in Article 1. Section 7.2 of the Agreement does provide that '[t]he Contract Documents . . . are enumerated as follows' and the notation immediately thereafter directs that among the contract documents to be listed are the Agreement, the General Conditions, the Drawings and the Specifications. However, it is not a reasonable interpretation of the contract to say that merely because the Agreement itself, the General Conditions, the Drawings and the Specifications are not listed following Section 7.2 that they are not a part of the contract and not binding upon the parties in spite of the otherwise definitive language of the contract to the contrary. If all of these documents were excluded as a part of the contract documents, there would be no contract; a proposition which neither of the parties advance." 769 S.W.2d at 482.

See *L. R. Foy Const. Co., Inc. v. Dean L. Dauley, Etc.*, 547 F. Supp. 166 (D. Kan. 1982); *First Condominium Develop. v. Apex Const.*, 126 Ill. App. 3d 843, 467 N.E.2d 932 (1984).

We agree with the reasoning of the Missouri and Massachusetts courts cited above. To hold that document A201 was not incorporated by reference would not be a reasonable interpretation of the agreement of the parties. It is clear that document A111 was not drafted with the intent that it should compose the entire agreement of the parties. It clearly states that it is to be used in connection with document A201. AIA document A201 is comprised of some 19 pages, has 15 different articles, and covers a number of issues vital to the agreement between the parties. As is pointed out in *Bailey*, without document A201, the parties would simply not have a completed agreement.

We conclude, in concert with the Missouri and Massachusetts opinions cited above, that document A201 was incorporated by reference into the agreement of the parties. We reach that conclusion by confining ourselves to a construction of the four corners of the agreement and hold that the agreement is not ambiguous as to this issue.

(b) Is the Bank entitled to judgment on its indemnification claim based on the uncontroverted facts?

It was the contention of the Bank in filing this action that Simpson is required to indemnify it for the damages the Bank was required to pay Brunner. This claim springs from Article 4.18.1 of Document A201, which reads as follows:

"4.18.1. To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner and the Architect and their agents and employees from and against all claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (2) is caused in whole or in part by any negligent act or omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Paragraph 4.18."

This particular provision of the agreement requires Simpson to indemnify the Bank for the claim in question if the following conditions are met: (1) The claim, damage, or loss must have arisen out of the performance of the work; (2) the claim, damage, or loss must have been attributable to bodily injury; and (3) the claim, damage, loss, or expense must have been caused in whole or in part by the negligence of Simpson.

Our review of the record indicates that all three of these conditions have been shown by uncontroverted evidence.

Indeed, only the first condition is in the slightest doubt. Brunner's claim arose from his installation of "closures" in the Bank's freight elevator. At the time he was injured, Brunner was employed by HMD and not by Simpson. Simpson argues that its relationship with HMD is that of vendor and vendee and that Brunner was somehow not performing any "work" (under the contract) when he was injured.

We disagree and hold that the uncontradicted facts of this case show that, when Brunner was injured, he was performing work under the agreement. It is not relevant whether Brunner was or was not a statutory employee of Simpson. Whatever status he occupied, the fact is that, at the time of his injury, Brunner was performing work which Simpson had contracted to perform. AIA document A111 identified, in part, the work to be performed by

Simpson as follows: "Removal and replacement of the doors, frames and hardware at the freight elevator entrance in the ally [*sic*] north of the bank."

It was precisely this "work" that Brunner was performing when he was injured. His claim did arise from the "work to be performed" under the contract. In addition to the claim having arisen from the work, there is no question that the claim was one for bodily injury sustained by Brunner. As to the fault aspects, the jury concluded Simpson to have been 7.5 percent at fault for causing the injury, thus satisfying the third condition precedent to a claim of indemnification.

We hold that, based on the uncontroverted facts developed in this matter, the Bank was entitled to summary judgment on its claim against Simpson for indemnification, unless the Bank is deemed to have waived that claim.

(c) Did the Bank waive its claim for indemnification?

The final argument by Simpson is that, by making final payment on its contract with Simpson, the Bank waived its right to indemnification. Simpson bases this argument on Article 9.9.4, document A201, which reads as follows:

"The making of final payment shall constitute a waiver of all claims by the Owner except those arising from:

".1 unsettled liens,

".2 faulty or defective Work appearing after Substantial Completion,

".3 failure of the Work to comply with the requirements of the Contract Documents, or

".4 terms of any special warranties required by the Contract Documents."

First of all, we have great doubts as to whether the waiver contemplated by Article 9.9.4 applies to a claim for indemnification under Article 4.18. Article 4.18 applies to claims for personal injuries sustained as a result of the performance of the "work." This indemnification provision obviously contemplates a long-term situation in which a third party may be injured by a defective part of the project long after the final payment has been made. It seems to us nonsensical to hold that a claim for indemnification for bodily injury under Article 4.18 is waived simply because the job is completed and the final payment has been made. A more reasonable interpretation of Article 9.9.4 is that

it does not bar claims for indemnification, but may bar other, more direct, contractual disputes between owner and contractor over the quality of the work where the issue is not raised until after payment and issuance of a certificate of completion.

We also believe that this particular claim for indemnification arose from the failure of the work to comply with the contract documents under section .3 of Article 9.9.4. Factually, there is no question but that this claim for indemnification would never have arisen had Simpson obtained the proper "closures" to complete the elevator work. Brunner was injured in installing these "closures" because Simpson had failed to order or obtain the proper hardware to comply with the contract documents. Under such circumstances and by the very terms of Article 9.9.4, payment of the final contract price did not waive a claim for indemnification which arose because of Simpson's failure to provide materials which complied with the requirements of the contract document.

Finally, the uncontroverted facts in this case show that the Bank was induced to pay Simpson by the assurance of Simpson that it would complete the work and see that the closures were installed. It is apparent that both parties contemplated additional work would be performed after the final payment and, under these circumstances, we are not constrained to hold that the Bank waived its right to indemnification which arose from the work agreed to be performed in the future. In *City of Wamego v. L. R. Foy Constr. Co.*, 9 Kan. App. 2d 168, 172, 675 P.2d 912, *rev. denied* 234 Kan. 1076 (1984), this court defined "waiver of a contractual right":

"Waiver in contract law implies that a party has voluntarily and intentionally renounced or given up a known right, or has caused or done some positive act or positive inaction which is inconsistent with the contractual right. *United American States Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.*, 221 Kan. 523, 526, 561 P.2d 792 (1977)."

In the instant matter, the conduct of the Bank in making final payment to Simpson in reliance on Simpson's agreement to provide the contract materials to complete the contract cannot be said to have been an act which voluntarily and intentionally relinquished the contractual right to indemnification.

The judgment of the district court is reversed and the matter is remanded with directions to enter summary judgment in favor of the Bank and against Simpson and to award the necessary monetary damages and other relief flowing as a result of such entry of judgment.

Reversed and remanded with directions.