(916 P.2d 72)
No. 74,113
JOHN D. WILSON, *Appellant*, v. DAYTEC CONSTRUCTION
COMPANY, *Appellee.*

Opinion filed
May 17, 1996.

*Thomas Francis Sullivan*, of Shawnee Mission, for appellant.

*Keith Martin* and *Robert E. James*, of Payne & Jones, Chartered, of Overland Park, for appellee.

Before GERNON, P.J., GREEN, J., and DAVID PRAGER, Chief Justice Retired, assigned.

GERNON, J.: John D. Wilson appeals a district court decision which granted summary judgment in favor of Daytec Construction Company (Daytec).

Wilson worked for a Nissan car dealership in Johnson County. The dealership contracted with Daytec to refurbish the dealership

premises. Daytec then subcontracted with Dahmer Construction Company (Dahmer) to paint paneling in a stairway.

Wilson and another employee moved a desk down a stairway. Dahmer had finished painting the same area a few days earlier. Wilson slipped on the stairway but did not fall. He looked and noticed that there was a slick, white residue which had accumulated on the stairs following the spray painting. After moving the desk, Wilson went back up the same stairs where he had observed the slick, white residue to retrieve a tool. At that time, Wilson knew the stairs were slippery and proceeded carefully, but he nevertheless slipped on the residue and fell down the flight of stairs, injuring himself.

Wilson filed a negligence action against Daytec. The court granted Daytec's motion for summary judgment. The court held that as a matter of law, Daytec owed no duty to Wilson since Daytec was not in control of the premises or the spray painting work. The court also held that spray painting was not an inherently dangerous activity. Wilson appeals. We affirm.

## Genuine Issues of Material Fact

Wilson first argues that the district court erred in granting summary judgment because genuine issues of material fact still exist. Wilson contends that issues of fact exist concerning whether Daytec was an occupier or possessor of the Nissan premises and whether Daytec controlled the premises and the painting work.

Our review of the record leads us to conclude that Wilson is confused as to issues of law and issues of fact. Daytec's status as a "possessor" of the premises is a legal conclusion drawn from the facts. However, the central facts concerning Daytec's presence at the Nissan agency and its exercise of control over the painting work are uncontroverted. At the district court level, Wilson alleged that Daytec was on the premises at all times. However, Wilson provided no evidence to substantiate this claim. Therefore, we conclude that Wilson failed to come forward with evidence to establish a dispute as to a material fact. The only issue was a question of law, and that was whether Daytec was a "possessor" in control of the premises. Given this, summary judgment was proper.

Wilson next argues that factual issues exist concerning whether the painting created an obvious danger and whether Daytec knew or should have known of this danger. Wilson cites *Miller v. Zep Mfg. Co.*, 249 Kan. 34, 43, 815 P.2d 506 (1991), where our Supreme Court stated the rule regarding obvious dangers:

"Generally, a possessor of land is under no duty to remove known and obvious dangers. *Balagna v. Shawnee County*, 233 Kan. 1068, 1083, 668 P.2d 157 (1983). However, the possessor may be under an affirmative duty to minimize the risk if there is reason to expect an invitee will be distracted, so that he or she will not discover what is obvious, will forget what has been discovered, or will fail to protect against the danger."

The only evidence available, and which would ever be available, concerning this issue is Wilson's own testimony regarding the condition of the stairs, which is already in the record. The facts concerning Wilson's knowledge of the danger and his level of distraction are not in dispute. Therefore, given that these facts are not in dispute, summary judgment is appropriate. See *McCubbin v. Walker*, 256 Kan. 276, 279-80, 886 P.2d 790 (1994).

## Inherently Dangerous Activity

Finally, Wilson argues that the inherently dangerous activity exception applies and exposes Daytec to liability.

The Kansas Supreme Court, in *Falls v. Scott*, 249 Kan. 54, 59, 815 P.2d 1104 (1991), explained the inherently dangerous activity rule:

"An exception to the general rule is the inherently dangerous activity doctrine, which provides that one who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such dangers. *Balagna*, 233 Kan. 1068, Syl. ¶ 4.

"Restatement (Second) of Torts § 427 defines the 'inherently dangerous activity' doctrine in the following language:

" 'One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such

others by the contractor's failure to take reasonable precautions against such danger.' "

Kansas courts have not addressed the precise question of whether spray painting is an inherently dangerous activity. See *McCubbin*, 256 Kan. at 292-93 (citing cases).

In *Benesh v. New Era, Inc.*, 207 Ill. App. 3d 1049, 566 N.E.2d 779 (1991), the defendant spray painted the exterior of a building, and paint overspray coated the plaintiff's nearby garage and fence. The court concluded that spray painting was inherently dangerous because overspray was a foreseeable consequence of the defendant's work which the defendant took no precautions to prevent. The court noted that the wind created an unavoidable risk of dangerous paint overspray.

However, in *Miles Farm Supply v. Ellis*, 878 S.W.2d 803, 805 (Ky. App. 1994), the court held that spray painting was *not* an inherently dangerous activity. In *Miles*, the defendant spray painted the exterior of some anhydrous tanks, and paint overspray splattered the plaintiff's nearby automobile. The court concluded that outside influences and circumstances, such as the presence of wind, should not alter the inherent nature of an activity. The court reasoned that without the circumstance of wind, spray painting could be accomplished without probable injury and, therefore, spray painting does not constitute an inherently dangerous activity.

We conclude that the Kansas Supreme Court laid down perhaps the best rule when it stated: "In determining whether an inherently dangerous activity exists, each case must rest upon its own facts." *McCubbin*, 256 Kan. at 290.

Here, the spray painting in the stairwell created a slick residue on the stairs. The creation of the residue is obviously inherent in the use of the spray paint. However, the dangerous aspect of the residue only comes into play if the residue is allowed to settle on a surface such as stairs or a floor. Clearly, if the residue settles on a tarp or other covering which is subsequently removed, no danger exists. Therefore, the danger is not inherent in spray painting, but rather in the exercise of reasonable care and preparation which goes to eliminate risk after the painting is completed.

In *McCubbin*, the Kansas Supreme Court held that the inherently dangerous activity doctrine is inapplicable if the risk could have been prevented by routine precautions which any careful contractor would be expected to take.

Therefore, applying the holding in *McCubbin* to the facts before us, we hold that the district court properly concluded that spray painting is not an inherently dangerous activity.

Affirmed.